**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. JKB-16-0363** |
| | ) | |
| **KENNETH FAISON, et al.** | ) | |
| | ) | |

...o0o...

**GOVERNMENT'S RESPONSE TO FAISON'S MOTION IN LIMINE TO
PRECLUDE ADMISSION INTO EVIDENCE OF DEFENDANT'S
GUILTY PLEAS IN STATE COURT (ECF 178)**

Kenneth Faison has moved to preclude the government from introducing evidence of his 2015 guilty pleas, entered in the Circuit Court for Baltimore City, to one count of criminal gang activity and two counts of assault with a handgun. ECF 178. Faison's co-defendant, Joseph Bonds, has moved to adopt Faison's arguments and to exclude *his* 2015 guilty pleas, also entered in the Circuit Court for Baltimore City, to one count of criminal gang activity and one count of possessing a firearm after being convicted of a controlled substance offense. ECF 184.

Although no other defendant has moved to adopt Faison's arguments or filed a similar motion of his own, the government anticipates that the issues raised in Faison's motion will apply to prior guilty pleas entered in state court by most of the defendants in this case. Under binding Fourth Circuit case law, those prior guilty pleas are admissible at trial, even if the defendants were not advised by their state defense attorneys that the admissions they made in connection with their guilty pleas could later be used against them in a federal prosecution under RICO.

Having admitted under oath that they were members of BGF, and/or that they committed state offenses that now form the basis for RICO predicates (or overt acts in furtherance of a RICO conspiracy), the defendants cannot now pretend as if those admissions do not exist. Neither the

Constitution, nor the Federal Rules of Evidence, nor relevant federal case law permit the indulgence of such a fiction by this Court.  For those reasons, and in light of the arguments presented in this memorandum, the government respectfully submits that the pending motions *in limine* should be denied.

The government further submits that the Court should decide the pending motions as soon as possible, preferably before the scheduled motions hearing on October 10 and 11, 2017. Deciding the motions now will accelerate plea negotiations with multiple defendants in this case, including but not limited to Faison and Bonds.   Pursuant to Local Rule 105.6, no hearing is necessary because the facts and legal contentions are adequately presented in the materials before the Court.

## I.      RELEVANT FACTUAL BACKGROUND

The pending motions challenge the admissibility of five state guilty pleas by two defendants, Faison and Bonds.  The facts relating to those guilty pleas are discussed in Section I.a below.

Further, as we have noted, seven of nine defendants have previously entered other, as-yet uncontested guilty pleas to state offenses, which they committed during and in furtherance of the racketeering conspiracy charged in count one of the superseding indictment.  As a technical matter, these state guilty pleas are not before the Court, and the question of their admissibility is not yet ripe.  As a practical matter, however, this Court's ruling as to the five contested guilty pleas almost certainly will decide the ultimate admissibility of the pleas that are currently unchallenged.  We have included a table listing potentially relevant, unchallenged state guilty pleas in Section I.b below.

### a.  Guilty Pleas Raised in Pending Motions

On January 12, 2015, Faison pled guilty to three counts of a six-count indictment in Baltimore City Circuit Court Case No. 11331024.  Specifically, Faison pled guilty to (i) Count Two, in which he was charged with criminal gang activity, in violation of Md. Code Ann., Criminal Law, § 9-804(a); (ii) Count Three, in which he was charged with first degree assault of Victim D.S., in violation of Md. Code Ann., Criminal Law, § 4-204; and (iii) Count Five, in which he was charged with first degree assault of Victim J.P., also in violation of Md. Code Ann., Criminal Law, § 4-204

On October 19, 2015, Bonds pled guilty to one count of a nine-count indictment in Baltimore City Circuit Court Case No. 113310044.  Specifically, Bonds pled guilty to Count Two, in which he was charged with criminal gang activity, in violation of Md. Code Ann., Criminal Law, § 9-804(a).  On the same date, Bonds also pled guilty to one count of an 11-count indictment in Baltimore City Circuit Court Case No. 11323002.  Specifically, Bonds pled guilty to Count One, in which he was charged with possessing a firearm after being convicted of a controlled substance offense, in violation of  Md. Code Ann., Criminal Law, § 5-622(b).

As the Court is aware, Faison and Bonds are charged in this case with conspiring to engage in racketeering activity, in violation of 18 U.S.C. § 1962(d).  This charge arises from the defendants' activities in furtherance of the Black Guerilla Family's Greenmount Avenue Regime.  During their guilty pleas to criminal gang activity in the state cases referenced above, Faison and Bonds admitted under oath to being members of BGF.[1]

---

[1]   We are including with this submission, as Exhibits 1 and 2, the video recordings of the defendant's state guilty plea proceedings.  These recordings, which have already been produced to defense counsel during discovery, will be hand delivered to chambers by government counsel.

The government further alleges, as part of its RICO conspiracy count, that Faison and Bonds committed multiple overt acts in furtherance of BGF. With respect to Faison, these include armed robberies of Victims J.P. and D.S., both committed on the same night, on the same block of Barclay Street, in January 2010. ECF 40, ¶¶ 33–34. Faison admitted the facts underlying these robberies during his 2015 guilty pleas to first degree assault.

Bonds, in turn, is alleged to have unlawfully possessed a firearm in furtherance of BGF on October 25, 2013. *Id*. at ¶ 81. He admitted the facts underlying this conduct during his 2015 guilty plea to possession of a firearm following a conviction for a controlled substance offense.

### b. Guilty Pleas Not Raised in Pending Motions, But Potentially Impacted by the Court's Ruling on Admissibility

The table below lists potentially relevant guilty pleas that have not yet been challenged by any defendant. More specifically, the table lists guilty pleas to state offenses committed during and in furtherance of the charged racketeering conspiracy in this case.[2] The government intends to offer evidence pertaining to these guilty pleas at trial.

| Defendant | Case Number(s) | Date of Plea | Offense(s) | Corresponding Federal Allegation(s) |
|---|---|---|---|---|
| Gerald Johnson | 4B01860394, District Court of Maryland, Baltimore City | 2/16/2007 | Assault Second Degree (two counts), Handgun on Person | ECF 40, ¶ 22 |
| Gerald Johnson | 107297026, Circuit Court for Baltimore City | 3/12/2008 | CDS Distribution | ECF 40, ¶ 27 |

---

[2]     The government will supplement this table in the event that new allegations are added to the charged conspiracy.

| David Hunter | 806268012, Circuit Court for Baltimore City | 9/26/2006 | Firearm on Person, Firearm Possession w/Felony Conviction | ECF 40, ¶ 21 |
|---|---|---|---|---|
| David Hunter | 107296020, Circuit Court for Baltimore City | 12/16/2008 | CDS Distribution | ECF 40, ¶ 28 |
| Montel Harvey | 812257015, Circuit Court for Baltimore City | 4/8/2013 | CDS Attempted Distribution | ECF 40, ¶ 41 |
| Montel Harvey | 113319945, Circuit Court for Baltimore City | 9/17/2015 | Criminal Gang Activity, CDS PWID | ECF 40, ¶ 72 |
| Kenneth Faison | 10796021, Circuit Court for Baltimore City | 12/16/2007 | CDS Distribution (two counts) | ECF 40, ¶ 28 |
| Kenneth Faison | 113008035, Circuit Court for Baltimore City | 8/3/2013 | CDS Distribution | ECF 40, ¶ 43 |
| Kenneth Faison | 113008036, Circuit Court for Baltimore City | 8/6/2013 | CDS Possession of Firearms | ECF 40, ¶ 47 |
| Joseph Bonds | 808315005, Circuit Court for Baltimore City | 11/12/2008 | CDS Unlawful Possession | ECF 40, ¶ 32 |
| Norman Handy | 113310036, 113346031, Circuit Court for Baltimore City | 10/2/2015 | Criminal Gang Activity, Robbery | ECF 40, ¶ 82 |
| Marquise McCants | 07K1001446, Circuit Court for Cecil County | 1/28/2011 | Assault First Degree | ECF 40, ¶ 36 |
| Marquise McCants | 115323012, Circuit Court for Baltimore City | 4/6/2016 | Possession of Marijuana, Tobacco in Place of Confinement | ECF 40, ¶ 84 |

## II.     ARGUMENT

### A.     The Defendants' Attack on the Validity of Their State Guilty Pleas is Foreclosed by Fourth Circuit Case Law.

As a threshold matter, Faison has never raised a challenge to the validity of his state guilty pleas before now.  Neither, for that matter, have any of his codefendants.  Thus, to prevail on their challenges here, the defendants must overcome the "strong presumption of validity that attaches to a plea that has never been questioned and no court has found infirm."  *United States v. Ayala*, 601 F.3d 256, 269 (4th Cir. 2010).

The defendants also must overcome *Ayala*, which is virtually indistinguishable from this case and squarely forecloses the defendants' argument that their pleas were not knowing and voluntary.  In *Ayala*, a member of MS-13 pled guilty in state court to illegally transporting a firearm.  *Id*.  At the time of the defendant's guilty plea, the state prosecutor knew that there was an ongoing federal investigation that could potentially lead to RICO charges against the defendant and his confederates.  *Id*.  In fact, after the defendant pled guilty in state court, and after he and his confederates were charged under RICO in this Court (in a case before Judge Chasanow), the state prosecutor who handled the defendant's guilty plea was designated as a Special Assistant U.S. Attorney for purposes of the federal case.  *Id*.

During the defendant's federal trial, the government introduced his state guilty plea as evidence that he possessed a firearm in furtherance of his involvement with MS-13.  *Id*.  The defendant objected, on the very same ground that Faison raises here: that his state guilty plea was involuntary because he was not informed that it could later be used against him in a federal case. *Id*.  Judge Chasanow rejected the defendant's argument, and she admitted evidence of his state guilty plea as an admission by a party-opponent pursuant to Fed. R. Evid. 801(d)(2).  *Id*.

The Fourth Circuit affirmed.  In an opinion by Judge Wilkinson, the Court explained that in order for a guilty plea to be constitutionally valid, "a defendant must be informed of the 'direct' but not the 'collateral' consequences of the plea."  *Id*. at 269-70 (citing *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1365 (4th Cir. 1973); and *Brady v. United States*, 397 U.S. 742, 755 (1970)).  That distinction, the Court noted, "turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment."  *Id*. at 270.  (quoting *Cuthrell*, 475 F.2d at 1366).

Pursuant to these principles, the Court determined that "[w]hether a guilty plea in state court might be used in a subsequent federal prosecution is plainly a collateral consequence."  *Ayala*, 601 F.3d at 270.  Judge Wilkinson explained as follows:

> In our system of dual sovereigns, state and federal courts run on separate tracks; thus, a guilty plea in one does not automatically lead to consequences in the other.  As the Seventh Circuit has explained, "the state court has no direct role in federal prosecutions.  The state and federal systems are separate and distinct, and the defendant need only be informed of the consequences he may face within the particular system."

*Id*. (quoting *United States v. Long*, 852 F.2d 975, 979 (7th Cir. 1988)).  *Id.; accord United States v. Dabney*, 498 F.3d 455, 458–59 (7th Cir. 2007); *United States v. Williams*, 104 F.3d 213, 216 (8th Cir. 1997); *United States v. Odom*, 1994 WL 669675 at 3–5 (6th Cir. Nov. 29, 1994) (unpub.); *United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993);[3] *United States v. Maestas*, 941 F.2d 273, 279 (5th Cir. 1991); *United States v. Campusano*, 947 F.2d 1, 4–5 (1st Cir. 1991); *United States v. Bouthot*, 878 F.3d 1506, 1511 (1st Cir. 1989); *United States v. Jordan*, 870 F.2d 1310,

---

[3]     It is worth noting that *Haddad* goes even further than *Ayala*, holding that where a defendant seeks to preclude the admission of a prior state guilty plea in a later federal case, the standard applied by the Supreme Court in *Boykin v. Alabama*, 395 U.S. 238, 241 (1969), which focuses on whether the prior plea was knowing and voluntary, is simply inapplicable.  *Haddad*, 10 F.3d at 1258.

1317 (7th Cir. 1989); *United States v. Riley*, 684 F.2d 542, 544–45 (8th Cir. 1982); *United States v. Frederick*, 702 F. Supp. 2d 32, 35-39 (E.D.N.Y. 2009). [4]

Curiously, Faison fails to bring *Ayala* to the Court's attention, perhaps because it disposes of his argument. Here, as in *Ayala*, the possibility of a future federal prosecution was speculative, indefinite, and, at best, a collateral consequence of Faison's state guilty pleas. And as in *Ayala*, Faison's state guilty pleas are not invalid "simply because [the defendant] was not informed of the possibility that [they] might be used against him in a subsequent federal prosecution." *Ayala*, 601 F.3d at 270.[5]

**B.     The Supreme Court's Decision in *Padilla v. Kentucky* Is of No Help to Faison in this Case.**

Although he does not confront *Ayala* directly, Faison seeks to evade its reasoning by advancing a flawed interpretation of the Supreme Court's decision in *Padilla v. Kentucky*. ECF 178 at 3–6, 178-1 at 8–15. Specifically, Faison argues that "any material distinction between

---

[4]     The government is aware of only one federal case in which a court reached a contrary result. In *United States v. Edwards*, a district court determined that a prior state guilty plea was inadmissible in a federal prosecution because the defendant was not advised that state court admissions could later be used in federal court. 669 F. Supp. 168 (S.D. Ohio 1987). *Edwards*, however, was later invalidated by the Sixth Circuit's ruling *Odom*, *supra*, *United States v. Odom*, 1994 WL 669675 at 3–5 (6th Cir. Nov. 29, 1994); and its reasoning was expressly rejected by the Seventh Circuit's ruling in *Jordan*, 870 F.3d at 1318 n. 3, as well as by the Fifth Circuit's ruling in *Maestas*, 941 F.2d at 279 n. 6, both of which Judge Wilkinson cited with approval in *Ayala*. 601 F.3d at 270.

[5]     In his motion, Faison asserts that he is *not* asking the Court "to rule that [his state guilty] pleas were invalid under state law or that the convictions should be vacated." ECF 178 at 7. He claims, instead, that he is simply asking the Court to determine whether his state guilty pleas are admissible in the government's case-in-chief. *Id.* In effect, Faison is attempting to persuade the Court that a ruling in his favor will not have an impact beyond this case. This, however, is almost certainly not true, for Faison has challenged his state guilty pleas under the Constitution. Thus, a ruling in his favor—i.e., a ruling that his state guilty pleas were *constitutionally* invalid—will necessarily require that his state convictions be set aside. Thus, there is far more at stake here the Faison is willing to acknowledge. Ultimately, however, this is (or ought to be) a purely academic discussion, as Faison's state guilty pleas *were* in fact valid, for the reasons that we have discussed.

'direct' and 'collateral' consequences [arising] from a guilty plea was eliminated by the *Padilla* decision."  ECF 178 at 4 n.3 (citing *Padilla*, 130 S. Ct. 1473, 1482 (2010)).  This is the linchpin of Faison's argument; for *if* he is correct, then the Fourth Circuit's holding in *Ayala*—which, as discussed above, is grounded in the distinction between direct and collateral consequences—would no longer govern this case.

But the holding in *Padilla* was far narrower than Faison suggests.   This is established by (i) *Padilla* itself; (ii) the Supreme Court's 2013 opinion in *Chaidez v. United States*, 568 U.S. 342 (2013), which examined *Padilla* to determine whether it should apply retroactively; and (iii) post-*Padilla* case law, in which courts have continued to distinguish between direct and collateral consequences outside the context of deportation—including, most notably, in the context of a guilty plea in which the defendant admitted to conduct that later supported a RICO indictment. These authorities demonstrate that *Padilla* is of no help to Faison in this case.

This Court's assessment of *Padilla* should begin with the backdrop against which the case was decided.  Prior to *Padilla*, courts across the country, including 10 federal courts of appeal, had held that advice regarding "collateral consequences," including deportation, was categorically removed from the Sixth Amendment's scope.  *See, e.g.*, *Chaidez*, 568 U.S. 349 & 350 n. 7 (citing cases).   In other words, if a defense attorney failed to advise his client regarding a collateral consequence, as opposed to a direct consequence, courts would not examine the attorney's performance under the *Strickland v. Washington* test for claims of ineffective assistance.  *Id*.  at 349.

In *Padilla*, the Supreme Court created a single exception to this rule.  The Court held that a defense attorney's failure to advise his client regarding the deportation consequences of a guilty plea violated the Sixth Amendment.  559 U.S. 356, 360 (2010).  The Court explained that its ruling

was limited to the "unique" context of deportation, which it characterized as "difficult to classify as either a direct or collateral consequence." *Id*. at 366. Given that difficulty, the Court determined that "the collateral versus direct distinction" was "ill-suited to evaluating a *Strickland* claim concerning *the specific risk of deportation*." *Id*. (emphasis added). Importantly, the Court made no pronouncements regarding the applicability of the distinction in other contexts. In fact, the Court expressly noted that "whether th[e] distinction is appropriate *is a question we need not consider in this case because of the unique nature of deportation*." *Id*. at 365 (emphasis added). Thus, although *Padilla* had the effect of "breaching the previously chink-free wall between direct and collateral consequences," as Justice Kagan later put it in *Chaidez*, 568 U.S. at 352–53, it did not tear the wall down entirely.

The *Chaidez* opinion is significant, because it rejected any notion that *Padilla* erased the distinction between direct and collateral consequences in non-deportation scenarios. Justice Kagan explained:

> [In *Padilla*,] [o]ur first order of business was … to consider whether the widely accepted distinction between direct and collateral consequences categorically foreclosed *Padilla's* claim, whatever the level of his attorney's performance. We did not think … that *Strickland* barred resort to that distinction. Far from it. Even in *Padilla* we did not eschew the direct-collateral divide across the board. *See* 559 U.S. at __, 130 S. Ct. at 1481 ("Whether that distinction is [generally] appropriate is a question we need not consider in this case"). Rather, we relied on the special "nature of deportation"—the severity of the penalty and the "automatic' way it follows from conviction—to show that "[t]he collateral versus direct distinction [was] ill-suited" to dispose of Padilla's claim. *Id*. at __, 130 S. Ct. at 1482.

*Id*. at 355.

This language amplifies what was already apparent from *Padilla* itself: that the holding in that case was simply and solely about deportation; and that outside that context, the distinction

between the direct and collateral consequences of a guilty plea remains alive and well.  This is confirmed by post-*Padilla* case law, in which federal courts have continued to apply the distinction in non-deportation scenarios.  *See*, *e.g.*, *United States v. Reeves*, 695 F.3d 637, 640–41 (7th Cir. 2012) (holding that *Padilla* was inapplicable where counsel failed to advise defendant that guilty plea to state drug offense could later form the basis for sentencing enhancement under 21 U.S.C. § 851; likelihood of sentencing enhancement was collateral consequence); *Kim v. Director, Va. Dept. of Corr.*, 103 F. Supp. 3d 749, 756 (E.D. Va. 2015) (declining to extend *Padilla* to advice regarding civil commitment); *Parrino v. United States*, 655 Fed. Appx. 399, 403 (6th Cir. 2016) (declining to extend *Padilla* to advice regarding potential exclusion from federal health care programs); *Dickson v. United States*, 2016 WL 2659602 at * 3-4 (W.D. Ark. May 9, 2016) (declining to extend *Padilla* to advice regarding potential registration as a sex offender); *United States v. Corkern*, 2017 WL 1207630 at * 4 (N.D. Miss. Mar. 31, 2017) (declining to extend *Padilla* to advice regarding Medicare and Medicaid licensing and privileges); *Thomas v. United States*, 2011 WL 1457917 at * (D. Md. Apr. 15, 2011) (Titus, J.) (declining to extend *Padilla* to advice regarding employment-related consequences).[6]

There is one additional post-*Padilla* case, *United States v. Tuakalau*, 562 Fed. Appx. 604 (10th Cir. 2014) (unpub.), that is especially relevant here.  In that case, the defendant pled guilty in federal court to four counts of Hobbs Act robbery and one count of using a firearm during a crime of violence.  *Id.* at 606.  Approximately two years later, the government charged the defendant with participating in a RICO conspiracy.  *Id.*  In support of its RICO charge, the government

---

[6]     *But see United States v. Riley*, 72 M.J. 115, 121 (C.A.A.F. 2013) (holding that sex offender registration can no longer be deemed collateral consequence of guilty plea); *Bauder v. Dept. of Corr. State of Florida*, 619 F.3d 1272, 1274–75 (11th Cir. 2010) (extending *Padilla* to affirmative mis-advice regarding likelihood of civil commitment).

alleged predicate crimes that were based on the same facts to which the defendant had admitted in his guilty pleas.  *Id*. Although the RICO charge was later dismissed, the defendant sought to withdraw his prior guilty pleas on multiple grounds, including, among others, his attorney's alleged failure to anticipate a RICO indictment, and to warn the defendant of that possibility, before the defendant entered his pleas.  *Id*. at 608.

The Tenth Circuit rejected the defendant's argument.  It explained that "the possibility of future RICO charges" was not a direct consequence of the defendant's guilty pleas, and that advice regarding that possibility was thus outside the scope of the Sixth Amendment.  *Id*.  In a significant footnote, the Court refused to extend the holding in *Padilla* to advice regarding future prosecution under RICO, which it distinguished from advice regarding deportation in the following passage:

> Simply by reading the statute, Padilla's counsel could easily have determined that he was eligible for deportation.  The situation here is not nearly so tidy.  A RICO prosecution is discretionary with the government (not presumptively mandatory) and predicting the government's inclination to do so in any particular case would require much more than simply reading a statute.[7]  *Padilla* is neither controlling nor even persuasive as to the issue presented here.

[7] Indeed, in situations such as this, where a state charge or charges have been fully adjudicated on their merits, predicting the likelihood of a future, successive federal prosecution is all the more speculative in light of the Department of Justice's Dual and Successive Prosecution Policy, also known as the "*Petite* Policy."  *See* United States Attorneys' Manual, § 9.2031, *available at* https://www.justice.gov/usam/usam-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals#9-2.031 (last visited Aug. 24, 2017).  The *Petite* Policy "precludes the initiation or continuation of a federal prosecution, following a prior state or federal prosecution based on substantially the same act(s) or transaction(s) unless three substantive prerequisites are satisfied: first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense, and that the admissible evidence probably will be sufficient to obtain and sustain a conviction by an unbiased trier of fact."  In light of this policy, and given the requirements that must be satisfied in order for the policy to be waived (all of which were met, to the satisfaction of the DOJ Criminal Division, in this case), predicting the likelihood of a successive federal prosecution, under RICO or any other authority, is fraught with significant uncertainty.  All of which is to say that, for purposes of the direct/collateral consequences distinction, a future RICO prosecution does *not* follow automatically from a particular defendant's guilty plea in state court.

12

*Id*. at 609 n. 4 (citation omitted).

Two key points emerge from *Tuakalau*.  First, if federal defense attorneys do not have a Sixth Amendment obligation to provide advice regarding potential RICO charges, then neither should *state* defense attorneys, who necessarily have less experience with RICO than their federal counterparts.  Second, and far more importantly, by refusing to extend *Padilla* to advice regarding potential RICO charges, *Tuakalau* confirms that *Padilla* did not overrule, or otherwise call into question, the reasoning behind the Fourth Circuit's holding in *Ayala*, which, unlike *Tuakalau*, is binding authority in this District.  After *Padilla*, as before, *Ayala* continues to bar Faison's efforts to invalidate his state guilty pleas.

*     *     *     *     *     *     *

To recap the foregoing discussion:  Faison's argument that *Padilla* eliminated the distinction between the direct and collateral consequences of a guilty plea, and that its holding should be extended to cover advice regarding potential prosecution under RICO, is a rather bold misstatement of the law.  The decision in *Padilla* is irrelevant to Faison's motion, which is governed instead by *Ayala*.  And pursuant to *Ayala*, the Court should determine that the defendants' state guilty pleas are not invalid simply because they were not informed that their admissions might be used against them in a subsequent federal case.

### C. Rule 403 Does Not Bar Introduction of the Defendants' State Guilty Pleas at Trial.

Faison argues that evidence of his state guilty pleas should be excluded pursuant to Fed. R. Evid. 403, on the ground that "[a]dmission of guilty pleas obtained in violation of the United States Constitution would be unfairly prejudicial to the defendant."  ECF 178 at 6.  As we have explained, however, Faison's (and his codefendants') guilty pleas were entirely constitutional.

13

They were knowing and voluntary.  They were not obtained in violation of the Sixth Amendment.
And there is no other reason why evidence of the state guilty pleas would result in undue prejudice
to the defendants.

The fact that evidence is prejudicial or harmful to a defendant's case is not a basis for
exclusion, so long as the evidence is relevant and probative.  *See*, *e.g.*, *United States v. Grimmond*,
137 F.3d 823, 833 (4th Cir. 1998); *United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008) )("[A]ll
evidence suggesting guilt is prejudicial to a defendant … that kind of general prejudice, however,
is not enough to warrant exclusion of otherwise relevant, admissible evidence[.]"); *cf. United
States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1988) ("To the extent that the defendant perceives
Rule 403 as a tool designed to permit the Court to even out the weight of the evidence, to mitigate
a crime, or to make a contest where there is little or none, he is mistaken.") (quotations omitted).
Evidence is subject to exclusion under Rule 403 only where it is *unfairly* prejudicial—that is, only
where the evidence is of such a character that it results in an undue tendency to suggest decision
on an improper basis.  Fed. R. Evid. 403, Advisory Committee Notes to 1972 Amendments; *see
also United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997) ("[T]he evidence's probative value
must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to
subordinate reason to emotion in the factfinding process.").

Here, evidence of Faison's (and his codefendants') state guilty pleas will not suggest
decision on an improper basis.  Nor will it incite an emotional response from jurors.  Rather, the
evidence will logically support a jury's conclusion that Faison and his codefendants were members
of BGF—because they admitted under oath to being members of BGF.  Evidence of the guilty
pleas should therefore be admitted at trial.

Faison does not cite a single case, nor is the government aware of any, upholding the exclusion a defendant's prior, valid guilty plea to a similar or lesser-included charge on grounds of undue prejudice.  To the contrary, courts throughout the country have held that evidence of such a plea "is properly admissible in a subsequent federal prosecution, even where admission of the plea could be considered virtually tantamount to directing a verdict." *United States v. Frederick*, 702 F. Supp. 2d 32, 37 (E.D.N.Y. 2009) (quotations omitted) (admitting evidence of state guilty to attempted robbery in federal prosecution for Hobbs Act robbery); *see also United States v. Riley*, 684 F.2d 542, 544-45 (8th Cir. 1982) (admitting evidence of state guilty plea to pimping in federal prosecution under Mann Act); *United States v. Dabney*, 498 F.3d 455, 497 (7th Cir. 2007) (admitting evidence of state guilty plea to gun possession in federal felon-in-possession case; noting that "[t]he admission was certainly compelling evidence of [the defendant's] guilt, and there was nothing prejudicial about it");  *United States v. Thetford*, 806 F.3d 442, 445-47 (8th Cir. 2015) (admitting evidence of federal guilty plea in one district to wire fraud and felon-in-possession in subsequent federal prosecution in another district for felon-in-possession, impersonating a federal officer, interstate stalking, and witness tampering).[8]

Pursuant to these authorities, Faison's (and his codefendants') state guilty pleas are substantive evidence of guilt that are highly probative and not unfairly prejudicial.  Indeed, as Judge Sykes explained in *Dabney*, *supra*, "[i]t is hard to imagine proof more specific to the offense charged than the defendant's own admission under oath to the essential facts constituting the offense."  498 F.3d at 458.  Accordingly, the Court should admit evidence of the defendants' state guilty pleas at trial, subject to a proper limiting instruction, if necessary.  To be clear, the

---

[8]     *Cf. United States v. Haddad*, 10 F.3d 1252, 1258 (7th Cir. 1993) ("If the defendant stated to a person on the street that he was in fact guilty of possessing this gun, his statement would admissible in his federal criminal trial.  The fact that he made the admission in a separate state court criminal procedure does not change the evidentiary test.").

government believes, as the Seventh Circuit found in *Dabney*, that such an instruction is an "unnecessary precaution in this case." 498 F.3d at 458. If, however, the Court believes that such an instruction is necessary to obviate any potential for unfair prejudice, the government is willing to refrain from mentioning the fact that the defendants' admissions occurred *during a guilty plea hearing* in state court. *See*, *e.g.*, *Frederick*, 702 F. Supp. 2d at 38 (approving of a similar precaution). Even under such an arrangement, the Court should still permit the government to introduce the defendants' admissions, and to refer to the fact that the admissions were made under oath, while represented by counsel, in a state proceeding. *Id*. With or without this precaution, it will not be "unfair" for the jury to consider evidence of the defendants' state guilty pleas at trial.

## III.   CONCLUSION

For the foregoing reasons, the Court should deny the pending motions without a hearing.


Respectfully submitted,


Stephen M. Schenning
Acting United States Attorney

By:   ___/s/_____
Peter J. Martinez
Christina A. Hoffman
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland  21201
(410) 209-4984

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 1st day of September, 2017 , I caused a copy of the

foregoing Response to be served on defense counsel through the electronic case filing system.

          /s/

Peter J. Martinez
Assistant United States Attorney