

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Peter J. Martinez*  *Suite 400*  *DIRECT: 410-209-4984*
*Assistant United States Attorney*  *36 S. Charles Street*  *MAIN: 410-209-4800*
*Peter.Martinez@usdoj.gov*  *Baltimore, MD 21201-3119*  *FAX: 410-962-0717*

October 29, 2017

The Honorable James K. Bredar
United States District Judge
101 W. Lombard Street
Baltimore, Maryland 21201

    Re:    United States v. Gerald Johnson et al., JKB-16-363

Dear Judge Bredar:

    We write in response to Marquise McCants' request for a continuance, which he filed electronically this afternoon. We take no position on the request for a continuance, but we vigorously oppose a severance of any kind. We have told defense counsel that for obvious safety reasons, we will not be making our *Jencks* production, which we had previously committed to making tomorrow, unless and until the Court determines that the trial will proceed as scheduled on November 13. Thus, from the government's point of view, time is of essence in determining whether a continuance is warranted.

    As the Court makes that determination, it should have the benefit of additional information that is not set forth in McCants' memorandum and exhibits. *First*, the "problem" that has generated McCants' motion is not of the government's making. To the contrary, it is entirely attributable to McCants' own statements regarding murders that he and his codefendants committed. When a defendant is caught having such conversations, and when the conversations are promptly disclosed, complaints of unfairness ring hollow, especially when the complaint is made 11 full days after the conversations in question are played for (and provided to) the defendant's attorney, as is true in this case.

    *Second*, the government has committed to using only two recorded conversations at trial. As discussed above, we played those conversations for McCants' counsel 11 days ago. We also provided him with the recordings themselves, as well as the associated linesheets. We further offered, to ensure that all defense counsel have access to everything we do, to produce *all* of the FBI's recordings. To facilitate that production, we asked defense counsel 11 days ago to provide us with a 128 GB thumb drive at their earliest convenience. As of this writing, only Mr. Bussard, counsel for Kenneth Jones, has taken us up on our offer.

    *Third*, although the FBI obtained the recordings without a warrant, neither McCants nor any other detainee had a reasonable expectation of privacy in the multi-purpose room in which the recording devices were placed. Thus, from our point of view, any challenge to the admissibility of the recordings is meritless, and can be briefed and decided on the same schedule that the Court has set for motions *in limine*.

Ultimately, notwithstanding the foregoing arguments, we understand that McCants and his counsel are in a difficult situation; and that they may need additional time to determine a strategy for dealing with the damning information that has just come to light.[1] Under these circumstances, we take no position on McCants' request for a continuance, other than to say that whatever the timetable, he is not entitled to a separate trial.

We are available for a hearing or conference call at the Court's convenience.

Very truly yours,

STEPHEN M. SCHENNING
Acting United States Attorney

By: _____/s/_____
Peter J. Martinez
Christina A. Hoffman
Assistant United States Attorneys

---

[1] And the evidence *is* damning. In one of the recorded conversations, McCants told Norman Handy, his fellow BGF member and codefendant in this case, that he and another individual had participated in a brutal murder of an as-yet unidentified victim. McCants explained that he shot the victim 11 times and stole the victim's cell phone while he (*i.e.*, the victim) was still "twitching." In the second conversation, McCants and Handy discussed the May 2013 murder of Moses Malone, which was committed by their codefendant Wesley Brown. Among other topics, McCants and Handy discussed the fact that Brown had been acquitted of the murder in state court; the differences between the evidence in the state and federal cases; and their shared concern that the government's cooperating witnesses might include Delando Belton, a/k/a "Eggy," or the individual to whom Brown sold the handgun that he had used to murder Malone. This conversation, which is fully transcribed in ECF 347, leaves little doubt that (i) Brown in fact murdered Malone; (ii) McCants and Handy are familiar with the details of the murder, including what became of the handgun that Brown used to shoot the victim; and (iii) McCants and Handy were attempting to identify "snitches" against their fellow BGF member and codefendant.