```
1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MARYLAND
2

3   UNITED STATES OF AMERICA,        )
                                     )
4            Plaintiff,              )
         vs.                         )
5                                    ) CRIMINAL NO.: JKB-16-0363
    MARQUISE McCANTS,                )
6                                    )
             Defendant.              )
7                                    )
    _____ )
8

9                  Transcript of Proceedings
              Before the Honorable James K. Bredar
10              Tuesday, November 14th, 2017
                    Baltimore, Maryland
11

12  For the Plaintiff:

13       Peter J. Martinez, AUSA

14       Christina A. Hoffman, AUSA

15

16  For Defendant Marquise McCants:

17       John R. Francomano, III, Esquire

18

19  Also Present:  Steven Wrobel, Esquire

20                 Martin Himeles, Esquire

21

22
   _____
23              Christine T. Asif, RPR, FCRR
24           Federal Official Court Reporter
             101 W. Lombard Street, 4th Floor
25              Baltimore, Maryland 21201
```

```
  1                      P R O C E E D I N G S

  2             THE COURT:  Good morning.  Be seated, please.

  3             Mr. Martinez, you may call the case.

  4             MR. MARTINEZ:  Good morning, Your Honor.  This is

  5    criminal case number JKB-16-363, United States versus Marquise

  6    McCants.  Peter Martinez for the Government.  With me this

  7    morning is AUSA Christina Hoffman.  We're here the because the

  8    Court has convened a hearing to address a potential conflict

  9    of interest.

 10             THE COURT:  Thank you.

 11             Good morning, Mr. Himeles, you've been appointed as

 12    conflict counsel for Mr. McCants?

 13             MR. HIMELES:  Good morning, Your Honor.

 14             THE COURT:  Thank you.  And Mr. Francomano is

 15    present as well.

 16             MR. FRANCOMANO:  Good morning, Your Honor.  John

 17    Francomano.

 18             THE COURT:  And Mr. McCants is personally present.

 19    Good morning to you, Mr. McCants.

 20             And, Mr. Wrobel, good morning to you.

 21             MR. WROBEL:  Good morning, Your Honor.

 22             THE COURT:  You've been appointed as counsel for the

 23    witness Michael Valcourt.  And Mr. Valcourt is present.

 24             Good morning to you, Mr. Valcourt.

 25             MR. VALCOURT:  Good morning, Your Honor.
```

1          THE COURT:  Thank you.  So, Mr. Martinez, let's

2     begin with your proffer of the testimony that you believe Mr.

3     Valcourt might provide during the government's case in

4     chief.

5          MR. MARTINEZ:  Your Honor, if Mr. Valcourt were to

6     testify as part of our case in chief, he would testify about

7     being the victim of a robbery and assault by Gerald Johnson at

8     the intersection of Eutaw and Lombard Street, outside a

9     nightclub, where Mr. Valcourt had been with a friend that

10    evening, had left the club, they observed two female patrons

11    outside on the corner having a fight.  Mr. Valcourt went to

12    intervene and the next thing he knew he was being bludgeoned

13    either with fists or by bricks by Mr. Johnson, the defendant

14    in this case.  Next thing Mr. Valcourt knew he woke up in

15    Mercy Hospital.  His cell phone and his key chain, his

16    lanyard, were taken from him and later returned.  So his

17    testimony would focus mostly -- entirely on the conduct of Mr.

18    Johnson in this case.

19         THE COURT:  And when did this allegedly occur?

20         MR. MARTINEZ:  January 6th of 2012.

21         THE COURT:  Okay.  And what, if anything, would Mr.

22    Valcourt have to say about Mr. McCants?

23         MR. MARTINEZ:  Nothing the government is aware of,

24    Your Honor.

25         THE COURT:  Okay.  Thank you, Mr. Martinez.

1          Mr. Francomano.

2          MR. FRANCOMANO:  Yes, Your Honor.

3          THE COURT:  You've had an opportunity to observe Mr.

4    Valcourt here in court this morning.

5          MR. FRANCOMANO:  I have, Your Honor.

6          THE COURT:  Does it confirm your suspicion reported

7    to the Court about a week ago that you might have previously

8    represented him in a landlord/tenant matter.

9          MR. FRANCOMANO:  It does, Your Honor.

10         THE COURT:  Is he one in the same person.

11         MR. FRANCOMANO:  He is, Your Honor.

12         THE COURT:  Thanks.  You may be seated.  Mr. Wrobel,

13   have you talked with Mr. Valcourt about the fact that during

14   his testimony here in court, it's at least theoretically

15   possible, I guess, that Mr. Francomano might be

16   cross-examining him?

17         MR. WROBEL:  Oh, yes, Your Honor.  We had an

18   opportunity to have that discussion as to why he's here and

19   why I'm here, Your Honor.

20         THE COURT:  Okay.  So does Mr. Valcourt, with your

21   counsel, believe that there -- that Mr. Francomano is in a

22   conflict situation here.  If he is in a conflict situation, is

23   it one that, as far as Mr. Valcourt's interests and rights are

24   concerned, is waivable.  How do you see it, Mr. Wrobel?

25         MR. WROBEL:  Well the way I see it, Your Honor, is

1    obviously Mr. Francomano's representation is certainly not the

2    same or substantially similar representation as to what's

3    occurring here.  However, I think under Section (c) of the

4    rule, I do not know, because I have not certainly seen Mr.

5    Francomano's files, as to whether there's anything within Mr.

6    Francomano's files or recollection that Mr. Francomano, under

7    his ethical obligations, could still be permitted to use in

8    terms of any kind of cross-examination with respect to the

9    credibility of Mr. Valcourt once Mr. Valcourt takes the stand.

10   So my position would be that Mr. Valcourt is not waiving any

11   attorney-client representations or waiving any conflict with

12   respect to Mr. Francomano's representation five years ago in

13   that matter.

14              THE COURT:  Well then --

15              MR. WROBEL:  If that makes sense.

16              THE COURT:  Then we'll steer away from waiver and

17   ask you the $64,000 question which is:  Do you think there's a

18   conflict?

19              MR. WROBEL:  I do not believe there's a conflict,

20   Your Honor.  Certainly, the -- just to be clear with the Court

21   and to be perfectly candid with the Court, I have not seen the

22   government's case.  I don't think I've even seen the

23   indictment.  My understanding is this has to do with a

24   defendant different than Mr. -- the defendant Mr. Francomano

25   is representing, separate in time, certainly.  It would seem

1    to me Mr. Johnson's attorney would be the person primarily

2    cross-examining Mr. Valcourt if that were to be the case.

3            The only thing I can posit to the Court is I don't

4    know in the universe of whatever was shared between Mr.

5    Valcourt and Mr. Francomano years ago, in that civil

6    landlord/tenant matter, that there would be anything that

7    could be raised to question Mr. Valcourt's credibility.  As I

8    stand here today, having had a conversation with Mr.

9    Francomano as well, I don't believe that there is.  And to be

10   candid with the Court, I don't believe that there is any

11   information that Mr. Francomano could ethically use under the

12   rules that would be admissible in court for purposes of

13   cross-examining Mr. Valcourt.  So I don't believe that under

14   the rules there's anything that satisfies certainly 19-301.9,

15   either (a), (b), or (c) in terms of representation of former

16   clients.

17           THE COURT:  Thank you, Mr. Wrobel.

18           All right.  So Mr. Himeles, counsel for Mr. McCants

19   is confronted with the testimony that Mr. Martinez has

20   proffered.  I can imagine, from many prior similar situations

21   that you and I have both been in in courtrooms in this

22   courthouse over the last 25 years, where defense counsel on

23   behalf of someone in Mr. McCants position would stand up and

24   might ask a question, but the line of questioning that I would

25   anticipate would be, "Mr. Valcourt, have you ever seen Mr.

1  McCants before?  You have no -- you know nothing about him,

2  right?  You've never seen him, you've never heard of him, have

3  you ever had a conversation with him?  You know, you don't

4  know anything about him; right?  You don't know anything about

5  my client, is that the case, Mr. Valcourt?"  Assuming you get

6  an answer, yeah, that's true, never heard of -- never seen him

7  before.  No further questions.  Thank you.

8          I mean, that is the strategy that I have seen

9  employed by counsel in the position of Mr. McCants' lawyer in

10 this kind of situation in the past, if the proffer provided by

11 the government is truly accurate in terms of what Mr. Valcourt

12 is likely to say.  So that's kind of the starting point for me

13 in trying to evaluate the potential conflict.  But you're the

14 one who represents Mr. McCants in this situation, I would like

15 to hear your views on the subject.

16          MR. HIMELES:  Yes.  Your Honor, that certainly is a

17 possibility.  What's a concern here is that, of course, this

18 is a criminal trial.  And in any trial, not just criminal

19 trials, as Your Honor knows better than I do, things happen

20 that aren't anticipated.  What we know about the relationship

21 between Mr. Francomano, the attorney-client relationship

22 between Mr. Francomano and Mr. Valcourt, is first there was

23 this landlord/tenant matter.  Mr. Francomano believes that he

24 got a couple of other calls.  He doesn't at this moment recall

25 what they were about.  They were after the landlord/tenant

1    matter, but a number of years ago and they did not ultimately

2    lead to representations.

3          But of course confidential information shared in

4    contemplation of representation is confidential.  And he would

5    be precluded from using that information.  And while he

6    doesn't remember it now, and I certainly take Mr. Francomano

7    at his word, during the course of a trial, as testimony comes

8    in, something may strike a cord and refresh his recollection.

9    And Mr. Valcourt's testimony, while I don't -- I'm not

10   questioning for a second the good faith of the government, it

11   may evolve in some unanticipated way.  For example, when he's

12   being cross-examined by counsel for the co-defendant.

13          So the concern here is that there clearly -- I would

14   submit there clearly is a potential conflict.  And if that

15   potential conflict materializes during the course of trial and

16   Mr. Francomano recalls something that is relevant, it turns

17   out that it's helpful to Mr. McCants or important to Mr.

18   McCants, Mr. Francomano to examine him -- examine Mr. Valcourt

19   concerning -- to a greater extent than the Court's hypothesis.

20   And if he recalls something that is relevant to that

21   cross-examination, he will be precluded from using it.

22          THE COURT:  But that hasn't happened yet.

23          MR. HIMELES:  It hasn't happened yet.  Your concern

24   is that it could evolve, because trials are living, breathing

25   events.  And no one can predict exactly what's going to happen

1    during the course of trial or how a memory might get

2    sparked.

3         MR. HIMELES:  That's right.  And if it happens

4    during the course of a trial, there will be no way to address

5    it at that point.

6         THE COURT:  Well, let me ask you this question, and

7    that is:  Are you confident as Mr. McCants' lawyer that were

8    that circumstance to develop during the trial, that Mr.

9    Francomano would, in confidence, reveal that circumstance to

10   you and your client, such that you could reassert -- or assert

11   actually, because it's not a reassertion, you could assert

12   then there's a conflict here.  That's assuming you're prepared

13   to stand by over the course of this trial and be on call if

14   such a circumstance were to develop.

15        MR. HIMELES:  I have no reason to think that Mr.

16   Francomano would not raise the issue, he obviously has raised

17   the issue -- the issue that arose when he received the *Jencks*

18   material.  So I think that he -- I think that's right.  My

19   client -- our client, but in this context my client, is

20   understandably concerned about having a lawyer who may be in a

21   position of being unable to represent him as to all -- as to

22   all witnesses going into a trial with that concern.

23        THE COURT:  Absolutely.  And your client is entitled

24   to conflict free counsel in -- as he faces these charges.  And

25   the Court will protect that right of his.  But the Court has a

1    threshold obligation, which is to make sure that before taking

2    any extraordinary action, like disqualifying a lawyer, that

3    there is actually a ripe and real conflict.  And so I don't

4    think, based on what I've heard today, that such a conflict

5    exists now.

6            But I think you've done a good job of articulating

7    how, during the course of a trial, they being unpredictable

8    events, you know, something could change.  And in those

9    circumstances, theoretically, I could imagine a conflict

10   potentially could arise.  I think it's extremely unlikely

11   given the factual predicate we have here.  But I don't

12   completely rule out the possibility of it.

13           So that's what causes me to proceed to the second

14   level of inquiry with you, which is that are you comfortable,

15   on behalf of Mr. McCants, with the notion that were a conflict

16   to emerge, that you as conflict counsel would be aware of it?

17           MR. HIMELES:  May I have a moment to confer with Mr.

18   McCants?

19           THE COURT:  Yes.

20           (Counsel conferring with client.)

21           THE COURT:  Mr. Himeles.

22           MR. HIMELES:  Your Honor, as I indicated previously,

23   I have no reason to think that Mr. Francomano would not be

24   candid or, you know, is in any way -- would be anything less

25   than candid with the Court or with me.  I do --

1          THE COURT:  I want to be clear, I'm not expecting

2     Mr. Francomano to reveal to you or to Mr. McCants, what

3     information it might be that suddenly gave rise in his mind to

4     there being a conflict, some memory out of something Mr.

5     Valcourt told him.  That's not the question.  The question is

6     whether he would just say, I've got a conflict.

7          MR. HIMELES:  I certainly think that he would do his

8     best.  I guess the difficulty I'm having is that in the heat

9     of trial it's very difficult to -- as I indicated previously,

10    it's difficult to anticipate what will arise.  And when it

11    arises a trial lawyer, of course, is first and foremost

12    thinking about how can I respond to it and reacting on his

13    feet.  And so I can't say that it's not possible that Mr.

14    Francomano, notwithstanding best efforts, would not realize

15    that there was a conflict.  We certainly all know that there

16    are many cases in which lawyers proceed notwithstanding

17    conflict because they don't think there's one, in addition to

18    the cases where they proceed knowing there's one.

19          So I don't have a specific scenario in mind, and I

20    expect Mr. Francomano to bring to my attention anything that

21    he -- I would expect him to bring anything to my attention

22    that he recognizes as a conflict.  But, you know, there is a

23    risk and there is -- you know, there's no way for anyone else

24    to judge that at the time.  And so if there is an oversight

25    that impairs his ability to examine Mr. Valcourt, then -- or

1    to make a determination whether to examine him and on what

2    subjects, then that oversight will have prejudiced Mr.

3    McCants.

4              THE COURT:  Okay.  So I understand that on a

5    theoretical basis.  But you know what really will raise this

6    question very squarely at the moment Mr. Himeles, not to put

7    you on the spot, but we -- there is actually no motion before

8    the Court to disqualify Mr. Francomano.  We're in a situation

9    where we're reviewing the question of whether or not he is

10   able to proceed, and whether or not he's conflict free, or if

11   there's a conflict whether there is waiver of it.  I took us

12   into this by simply asking the question last week of, well, if

13   there is a conflict is it a waivable conflict and has it been

14   waived?  And then we decided, well, we can't really ask that

15   question without conflict counsel having been appointed and so

16   forth.

17             Well, now all of that has been accomplished.  And

18   honestly, this morning, in speaking with you and Mr. Wrobel,

19   I'm not persuaded that as of this moment that there's any

20   conflict.  I am persuaded that there's a remote possibility

21   that one could arise.

22             I can't quite imagine exactly how, given the proffer

23   from Mr. Martinez, which is that this witness was involved in

24   a specific incident, not an ongoing relationship, but a

25   specific particular incident with Defendant Johnson, that

that -- it's in relation to that incident that the government
is calling him to testify as a witness.  And that there
doesn't seem to be anything to indicate that this testimony
will bear in any way, shape, or form on the culpability of Mr.
McCants, because while it's certainly the government's theory
that Mr. Johnson had a very substantial relationship with Mr.
McCants, this particular incident, based on the proffer I've
heard, doesn't figure into that part of the government's case
at all.  The testimony seems to be focused solely and
exclusively on conduct that Mr. Johnson allegedly engaged in.

        So I do not perceive a conflict now.  I do not have
before me a motion seeking to disqualify Mr. Francomano from
the representation of Mr. McCants.  And without such a motion,
which Mr. Himeles, of course, I'll give you every opportunity
to make, but of course you can only make that motion if you've
got, you know, your good faith basis for making it.  I haven't
heard one yet.  I said I haven't heard the motion yet, I
haven't given you a chance to try to show a good faith basis
if you do make such a motion.  But my understanding of where
we are is that we've uncovered a -- the potential, I think the
remote potential for a conflict to become apparent.

        As the matter stands at the moment, I am unable to
articulate, nor has any lawyer articulated to me, the scenario
under which the conflict actually develops, not a theoretical
one, but actually.  You know, this is what Mr. Francomano, or

1    someone in his shoes, should reasonably be asking Mr. Valcourt

2    about in cross-examination.  This is a line of impeachment

3    that he should be pursuing.  This is why it is important to

4    Mr. McCants that the credibility of Mr. Valcourt be attacked

5    and undermined if possible.  This is the strategic value of

6    such a -- well, of such a strategy on the part of the defense

7    of Mr. McCants.  None of that has been laid out here.

8              So --

9              MR. HIMELES:  Your Honor, if I may?

10             THE COURT:  Yes, Mr. Himeles.

11             MR. HIMELES:  One point, and that is that I do think

12   that the testimony of Mr. Valcourt does relate to Mr. McCants

13   in the legal sense.  This is testimony concerning a fight,

14   which I presume the government contends was in furtherance of

15   the alleged conspiracy.  And under *Pinkerton* it would be

16   imputed to Mr. McCants as well.  It's not clear to me and, of

17   course, I don't know the case in the way that Mr. Francomano

18   does and in the way that the government does, but it's not

19   clear to me how it's in furtherance of the conspiracy.  But I

20   presume that that is their contention.  If it weren't I don't

21   know what basis it would be offered.  So in that sense the

22   evidence is evidence that's being offered against Mr. McCants

23   as well.

24             THE COURT:  Suppose the government was prepared to

25   enter into a stipulation that any testimony from Mr. Valcourt

1    is not admissible against Mr. McCants, would that cure any

2    theoretical abstract possibility of there being a conflict

3    here, subject to the normal concerns that lawyers always have

4    about, well, that's just a limiting instruction and the jury's

5    still hearing it, et cetera, I understand, but apart from that

6    concern, would that serve as a technical solution to our

7    theoretical problem?

8         MR. HIMELES:  Well, the concern that Your Honor's

9    articulated of course is the concern I was about to

10   articulate, because lawyers articulate those concerns and I'm

11   a lawyer, so that's -- but that is a real concern.  It's

12   always a concern.  And a limiting instruction goes only so

13   far, but I know Your Honor understands that.

14        Beyond that, I'm not sure that honestly I would need

15   to confer with Mr. Francomano and with my client, as to

16   whether such a stipulation would be beneficial.  It would

17   prevent or -- it wouldn't prevent, I suppose as long as Mr.

18   Francomano could still stand up, assuming the only thing he

19   has to cross-examine Mr. Valcourt about is along the lines of

20   what you suggested earlier, you've never met Mr. McCants,

21   you've never seen him, you don't know who he is, as long as

22   that cross-examination would still be permitted, then I think

23   such a stipulation would be -- would be helpful.

24        THE COURT:  Well, let me first ask the government

25   whether they would be willing to enter into such a

1    stipulation.

2         MR. MARTINEZ:  We'd have to consider that, Your

3    Honor, there is an allegation in our speaking indictment in

4    the RICO conspiracy count, that members of the Greenmount

5    regime committed robberies, both inside and outside their

6    territory, and there will be testimony by multiple witnesses

7    about instances in which somebody said, hey, I got a lick for

8    us over on the west side, or somebody went and did a robbery

9    in Cecil County, or there was an assault and robbery in this

10   case at Eutaw and Lombard.  So the mere fact that it happened

11   outside the territory occupied by this gang doesn't make it

12   not in furtherance.  And so to answer the question --

13        THE COURT:  Well, I assume you have a theory for why

14   it's in furtherance, I don't think that's really what's in

15   debate here.  The question is whether you're prepared to carve

16   out one incident and say the proof on this incident is not

17   being offered against Mr. McCants.

18        MR. MARTINEZ:  And the reason I was, I think,

19   explaining our theory why it's in furtherance of the

20   conspiracy was to say, you know, at the end of the day, Your

21   Honor, this is an overt act that we've alleged in furtherance

22   of the conspiracy and as brought by the grand jury, I think

23   would apply to all defendants.

24        To the extent the Court has a real concern about a

25   conflict here, and I understand the potential conflict being

1    raised here to be very -- it's based on the very speculative

2    assumption that there's going to be some kind of eureka moment

3    while Mr. Valcourt is on the stand, in terms of Mr. Francomano

4    suddenly remembering something he doesn't remember now, having

5    gone through his file and prepared for today's hearing, and

6    all the sudden Mr. Valcourt's going to get on the stand and

7    he's going to have a eureka moment, and remember some piece of

8    impeachment material.  That's speculative assumption number

9    one.  Speculative assumption two is that something in the heat

10   of trial prevents him from adequately raising his hand and

11   saying, hey, I have a conflict.

12            In light of all of that, given the speculative

13   nature of a potential conflict, given the fact that the grand

14   jury returned this indictment with an overt act alleged

15   against all nine defendants in the case, I'm not persuaded

16   that we need or ought to have to enter into such a

17   stipulation.

18            THE COURT:  It's totally your call.  You know, I'm

19   not in the business of forcing lawyers to enter into

20   stipulations.  I just throw it out as one possible approach to

21   dealing with the issue or the problem.  It's your record.  And

22   you, you know, will make your own judgment about what you need

23   to do to protect it.  And it was simply a question.  I

24   understand the government's position.

25            MR. MARTINEZ:  Thank you, Your Honor.

1          THE COURT:  Yes.  Mr. Himeles.

2          MR. HIMELES:  Well, Your Honor, I suppose the only

3     point that I would make is that Mr. Martinez's response of the

4     government's position illustrates two things, first how this

5     testimony does relate to Mr. McCants.  And secondly --

6          THE COURT:  Indeed.

7          MR. HIMELES:  I think that if the issue does arise

8     at trial, however speculative or uncertain that may be, if it

9     does arise at trial, I don't think at that point it would be

10    curable.  I think that the opportunity to address that issue

11    will -- is -- presents itself now.  And once we're at trial, I

12    think that if the jury hears testimony from -- and then is

13    told to disregard a witness's testimony there would be, you

14    know, after a, you know, after everybody rushes up to the

15    bench and there's lots of concern, I'm not sure how that bell

16    can be unrung.

17          It's not just, you know, one statement as, you know,

18    as typically happens.  A witness is testifying, he makes a

19    statement, there's an objection, counsel -- the Court

20    instructs the jury to disregard it.  It's a witness, it's an

21    entire witness whose testimony the jury is told to disregard

22    after they've already heard it.  So I think it would be very

23    difficult to address it at that point.

24          THE COURT:  Thank you, Mr. Himeles.  Well, my ruling

25    today is that I have not been persuaded that there is actually

1    a conflict of interest that Mr. Francomano is confronted with

2    as things stand currently.  I find that he -- that despite our

3    best efforts to explore this, that there's no -- here are the

4    differences:  Mr. Francomano represented Mr. Valcourt many

5    years ago, it was in 2010 as I recall, Mr. Francomano?

6                MR. FRANCOMANO:  Correct, Your Honor.

7                THE COURT:  In 2010.  It was in a landlord/tenant

8    matter, not a criminal case.  The high water mark of this is

9    that there may have been some conversations between Mr.

10   Valcourt and Mr. Francomano in months or years subsequent to

11   2010, during which there was at least consideration on the

12   part of the two of them that they would reform their

13   attorney-client relationship, and that Mr. Francomano would

14   represent Mr. Valcourt in other matters.  But none of that

15   ever came to fruition, and the actual representation is

16   limited to the single landlord/tenant matter some seven years

17   ago.

18                So Mr. Francomano has been representing Mr. McCants

19   pursuant to court appointment in this case since earlier this

20   year, Mr. Francomano?

21                MR. FRANCOMANO:  February of 2017.

22                THE COURT:  So February 2017, some seven years or

23   nearly seven years subsequent to the representation of Mr.

24   Valcourt in the landlord/tenant matter.  So there's been a

25   substantial passage of time.  Mr. Francomano is an esteemed

1    officer of this court and I have every confidence that, like

2    the other good lawyers that practice here, he will for this

3    court identify and own his conflicts.  And to this point,

4    other than detailing the circumstances of this prior

5    representation has not asserted that he has a conflict of

6    interest in this matter.

7         Mr. Francomano, one last time, on the record, do you

8    assert that there is a conflict that precludes you from

9    representing Mr. McCants during this trial?

10        MR. FRANCOMANO:  I do not, Your Honor.

11        THE COURT:  Okay.  The Court has nonetheless reacted

12   to the whole scenario as laid out before it last week, by

13   taking the very conservative and careful step of appointing

14   conflict counsel for Mr. McCants.  And in doing so, went out

15   of its way to appoint one of the most experienced and highly

16   regarded criminal defense attorneys in this state to counsel

17   Mr. McCants in this regard.  And then to advocate Mr. McCants'

18   position before the Court this morning.

19        And Mr. Himeles has not disappointed.  He has risen

20   to that task, as I had hoped he would, and I believe has made

21   the strongest and most persuasive arguments that the fact

22   wills allow in this situation.  And despite the efforts of a

23   very good lawyer, who has taken the time to get himself up to

24   speed on the relevant facts and circumstances, the case I

25   find, at least so far, cannot be made that there is a

1    disqualifying conflict for Mr. Francomano.

2            The reality is that, given how the testimony is

3    going to evidently be presented, there doesn't appear to be a

4    line of cross-examination of any substance for counsel for Mr.

5    McCants to pursue vis-a-vis Mr. Valcourt.  Even if there was,

6    there's no indication or evidence that, especially given the

7    passage of time, the different character of the case that Mr.

8    Francomano was involved in with Mr. Valcourt, there doesn't

9    seem to be anything arising out of that that would amount to

10   impeachment material or the like that would assist Mr. McCants

11   in the situation that he finds himself here.  But I don't want

12   to spend too much time on that topic, because the most

13   important point is that there doesn't -- it's not apparent to

14   the Court that there is a line of cross-examination that it

15   would be logical to pursue regardless, simply because Mr.

16   Valcourt has nothing to say about Mr. McCants.

17           So we're left with Mr. Himeles's best argument,

18   which is a very theoretical one.  And it pulls us into sort of

19   well, Mr. McCants has *Pinkerton* liability, potentially, given

20   the way that this is charged.  And that's, you know,

21   theoretically true.  But if it doesn't change how a lawyer,

22   sitting where Mr. Francomano is, if it doesn't change how he

23   would approach the witness Valcourt and examine him, then it's

24   really a legal circumstance of no particular significance.  It

25   doesn't change what Mr. Francomano would or could do in the

1    circumstances.  He just doesn't have anything to ask Mr.

2    Valcourt as the situation presents itself right now.

3            And in the present situation, Mr. Himeles is unable

4    to convince me that there is some line to go down.  What Mr.

5    Himeles has got is the -- not fanciful notion that things

6    change during the course of a trial.  And you can't predict

7    with perfect certainty, during the week before trial,

8    everything that's going to happen during a nine week long

9    trial.  Well, that's fact, but it's a potential, a remote one.

10    But the ultimate conclusion is there is no ripe conflict at

11    this time.  And, therefore, there's really nothing for Mr.

12    McCants to waive.

13            I agree, ultimately, with Mr. Wrobel's view about

14    Mr. Valcourt, there's really nothing for him to waive either

15    because there's no real conflict.  And the last part of this

16    is that Mr. Francomano knows what his responsibilities are as

17    an officer of this Court.  And if, during the course of the

18    trial, the circumstances change such that he changes his

19    position with the Court and finds that he does have a

20    conflict, then I have every confidence that he will alert the

21    Court to that circumstance.

22            I've given Mr. McCants the opportunity to express

23    his view on this subject, through Mr. Himeles, in terms of

24    laying out how there may well be a conflict.  Certainly, the

25    client's side of the equation has to be looked at very

1    closely.  It's not dispositive that Mr. Francomano says

2    there's not a conflict.  That's why we appoint conflict

3    counsel, we want to hear from the client through counsel,

4    separate counsel, specifically on that question.  But I'm not

5    persuaded that there is a problem here.  And, accordingly,

6    nothing changes for now.

7         Mr. Himeles, I will be grateful if you will agree to

8    treat your appointment as one that continues through the life

9    of the trial.  And be grateful if you are on sort of a loose

10   standby basis to be brought back into the discussion if

11   circumstances should change.  Are you willing to do that?

12        MR. HIMELES:  I am, Your Honor.  But my -- I should

13   tell the Court and counsel that I will be out of town on

14   business the entire week of November 27th, except I'll be

15   leaving that Monday afternoon.

16        THE COURT:  Okay.  When do you think Mr. Valcourt

17   might testify, Mr. Martinez?

18        MR. MARTINEZ:  Not until December at the earliest,

19   Your Honor.

20        THE COURT:  Okay.  So it sounds like we'll be okay

21   there.

22        And, Mr. Wrobel, I suppose I should make the same

23   request of you.  Although, it's a little harder for me to even

24   imagine how your services might be further needed with respect

25   to this question.  But you've entered into an attorney-client

1   relationship with Mr. Valcourt, so if you could be available

2   as well on a standby basis if we have to revisit this.  Are

3   you willing to do that?

4            MR. WROBEL:  Certainly, Your Honor.

5            THE COURT:  Okay.  Anything else we can productively

6   address today, Mr. Martinez?

7            MR. MARTINEZ:  No, sir.  Thank you.

8            THE COURT:  Mr. Himeles?

9            MR. HIMELES:  No nothing.  Thank you, Your Honor.

10           THE COURT:  Mr. Francomano, anything?

11           MR. FRANCOMANO:  No, Your Honor.

12           THE COURT:  Anything else from you, Mr. Wrobel?

13           MR. WROBEL:  No, Your Honor.

14           THE COURT:  Okay.  Very good.  Thank you to

15   everyone.  We're in recess.  The defendant's remanded to the

16   custody of the Marshal.  Counsel are excused.

17           (The proceedings were concluded.)

18

19           I, Christine Asif, RPR, FCRR, do hereby certify that
     the foregoing is a correct transcript from the stenographic
     record of proceedings in the above-entitled matter.

20

              _____/s/_____
21                  Christine T. Asif
                 Official Court Reporter
22

23

24

25

< Dates >
February 2017
  19:22.
January 6th 3:20.
November 14th
  1:19.
November 27th
  23:14.
$64,000 5:17.
.
.
< 1 >.
101 1:48.
19-301.9 6:14.
.
.
< 2 >.
2010 19:5, 19:11.
2010. 19:7.
2012 3:20.
2017 1:19, 19:21.
21201 1:49.
25 6:22.
.
.
< 4 >.
4th 1:48.
_____/s/_____
    _____ 24:23.
.
.
< A >.
A. 1:27.
ability 11:25.
able 12:10.
above-entitled
  24:21.
Absolutely 9:23.
abstract 15:2.
accomplished
  12:17.
accordingly 23:5.
accurate 7:11.
act 16:21, 17:14.
action 10:2.
actual 19:15.
actually 9:11, 10:3,
  12:7, 13:24,
  13:25, 18:25.
addition 11:17.

address 2:8, 9:4,
  18:10, 18:23,
  24:6.
adequately 17:10.
admissible 6:12,
  15:1.
advocate 20:17.
afternoon 23:15.
ago 4:7, 5:12, 6:5,
  8:1, 19:5,
  19:17.
agree 22:13, 23:7.
alert 22:20.
allegation 16:3.
alleged 14:15,
  16:21, 17:14.
allegedly 3:19,
  13:10.
allow 20:22.
already 18:22.
Although 23:23.
AMERICA 1:5.
amount 21:9.
answer 7:6, 16:12.
anticipate 6:25,
  11:10.
anticipated 7:20.
apart 15:5.
apparent 13:21,
  21:13.
appear 21:3.
apply 16:23.
appoint 20:15,
  23:2.
appointed 2:11,
  2:22, 12:15.
appointing 20:13.
appointment 19:19,
  23:8.
approach 17:20,
  21:23.
argument 21:17.
arguments 20:21.
arise 10:10, 11:10,
  12:21, 18:7,
  18:9.
arises 11:11.
arising 21:9.
arose 9:17.
articulate 13:23,

  15:10.
articulated 13:23,
  15:9.
articulating 10:6.
Asif 1:46, 24:19,
  24:24.
assault 3:7, 16:9.
assert 9:10, 9:11,
  20:8.
asserted 20:5.
assist 21:10.
assume 16:13.
Assuming 7:5, 9:12,
  15:18.
assumption 17:2,
  17:8, 17:9.
attacked 14:4.
attention 11:20,
  11:21.
attorney 6:1.
attorney-client
  5:11, 7:21, 19:13,
  23:25.
attorneys 20:16.
AUSA 1:25, 1:27,
  2:7.
available 24:1.
aware 3:23, 10:16.
away 5:16.
.
.
< B >.
back 23:10.
Baltimore 1:20,
  1:49.
based 10:4, 13:7,
  17:1.
basis 12:5, 13:16,
  13:18, 14:21,
  23:10, 24:2.
bear 13:4.
become 13:21.
begin 3:2.
behalf 6:23,
  10:15.
believe 3:2, 4:21,
  5:19, 6:9, 6:10,
  6:13, 20:20.
believes 7:23.
bell 18:15.

bench 18:15.
beneficial 15:16.
best 11:8, 11:14,
  19:3, 21:17.
better 7:19.
Beyond 15:14.
bludgeoned 3:12.
breathing 8:24.
bricks 3:13.
bring 11:20,
  11:21.
brought 16:22,
  23:10.
business 17:19,
  23:14.
.
.
< C >.
call 2:3, 9:13,
  17:18.
calling 13:2.
calls 7:24.
candid 5:21, 6:10,
  10:24, 10:25.
careful 20:13.
carve 16:15.
case 2:3, 2:5, 3:3,
  3:6, 3:14, 3:18,
  5:22, 6:2, 7:5,
  13:8, 14:17,
  16:10, 17:15,
  19:8, 19:19,
  20:24, 21:7.
cases 11:16,
  11:18.
causes 10:13.
Cecil 16:9.
cell 3:15.
Certainly 5:1, 5:4,
  5:20, 5:25, 6:14,
  7:16, 8:6, 11:7,
  11:15, 13:5,
  22:24, 24:4.
certainty 22:7.
certify 24:19.
cetera 15:5.
chain 3:15.
chance 13:18.
change 10:8, 21:21,
  21:22, 21:25,

22:6, 22:18,
  23:11.
changes 22:18,
  23:6.
character 21:7.
charged 21:20.
charges 9:24.
chief 3:4, 3:6.
Christina 1:27,
  2:7.
Christine 1:46,
  24:19, 24:24.
circumstance 9:8,
  9:9, 9:14, 21:24,
  22:21.
circumstances 10:9,
  20:4, 20:24, 22:1,
  22:18, 23:11.
civil 6:5.
clear 5:20, 11:1,
  14:16, 14:19.
clearly 8:13,
  8:14.
client 7:5, 9:10,
  9:19, 9:23, 15:15,
  22:25, 23:3.
client. 10:20.
clients 6:16.
closely 23:1.
club 3:10.
co-defendant 8:12.
comes 8:7.
comfortable 10:14.
committed 16:5.
completely 10:12.
concern 7:17, 8:13,
  8:23, 9:22, 15:6,
  15:8, 15:9, 15:11,
  15:12, 16:24,
  18:15.
concerned 4:24,
  9:20.
concerning 8:19,
  14:13.
concerns 15:3,
  15:10.
concluded. 24:17.
conclusion 22:10.
conduct 3:17,
  13:10.

confer 10:17,
  15:15.
conferring 10:20.
confidence 9:9,
  20:1, 22:20.
confident 9:7.
confidential 8:3,
  8:4.
confirm 4:6.
conflicts 20:3.
confronted 6:19,
  19:1.
conservative
  20:13.
consider 16:2.
consideration
  19:11.
conspiracy 14:15,
  14:19, 16:4,
  16:20, 16:22.
contemplation 8:4.
contends 14:14.
contention 14:20.
context 9:19.
continues 23:8.
convened 2:8.
conversation 6:8,
  7:3.
conversations
  19:9.
convince 22:4.
cord 8:8.
corner 3:11.
Correct 19:6,
  24:20.
Counsel 2:12, 2:22,
  4:21, 6:18, 6:22,
  7:9, 8:12, 9:24,
  10:16, 10:20,
  12:15, 18:19,
  20:14, 20:16,
  21:4, 23:3, 23:4,
  23:13, 24:16.
count 16:4.
County 16:9.
couple 7:24.
course 7:17, 8:3,
  8:7, 8:15, 9:1,
  9:4, 9:13, 10:7,
  11:11, 13:14,

13:15, 14:17,
15:9, 22:6,
22:17.
courthouse 6:22.
courtrooms 6:21.
credibility 5:9,
6:7, 14:4.
CRIMINAL 1:9, 2:5,
7:18, 19:8,
20:16.
cross-examination
5:8, 8:21, 14:2,
15:22, 21:4,
21:14.
cross-examine
15:19.
cross-examined
8:12.
cross-examining
4:16, 6:2, 6:13.
culpability 13:4.
curable 18:10.
cure 15:1.
currently 19:2.
custody 24:16.
.
.
< D >.
day 16:20.
dealing 17:21.
debate 16:15.
December 23:18.
decided 12:14.
Defendant 1:12,
1:31, 3:13, 5:24,
12:25, 24:15.
defendants 16:23,
17:15.
defense 6:22, 14:6,
20:16.
despite 19:2,
20:22.
detailing 20:4.
determination
12:1.
develop 9:8, 9:14.
develops 13:24.
differences 19:4.
different 5:24,
21:7.

difficult 11:9,
11:10, 18:23.
difficulty 11:8.
disappointed
20:19.
discussion 4:18,
23:10.
dispositive 23:1.
disqualify 12:8,
13:12.
disqualifying 10:2,
21:1.
disregard 18:13,
18:20, 18:21.
DISTRICT 1:1, 1:2.
doing 20:14.
done 10:6.
down 22:4.
during 3:3, 4:13,
8:7, 8:15, 9:1,
9:4, 9:8, 10:7,
19:11, 20:9, 22:6,
22:7, 22:8,
22:17.
.
.
< E >.
earlier 15:20,
19:19.
earliest 23:18.
efforts 11:14, 19:3,
20:22.
either 3:13, 6:15,
22:14.
emerge 10:16.
employed 7:9.
end 16:20.
engaged 13:10.
enter 14:25, 15:25,
17:16, 17:19.
entered 23:25.
entire 18:21,
23:14.
entirely 3:17.
entitled 9:23.
equation 22:25.
especially 21:6.
Esquire 1:33, 1:37,
1:39.
esteemed 19:25.

et 15:5.
ethical 5:7.
ethically 6:11.
eureka 17:2, 17:7.
Eutaw 3:8, 16:10.
evaluate 7:13.
evening 3:10.
events 8:25, 10:8.
everybody 18:14.
everyone 24:15.
everything 22:8.
evidence 14:22,
21:6.
evidently 21:3.
evolve 8:11, 8:24.
exactly 8:25,
12:22.
examine 8:18, 11:25,
12:1, 21:23.
example 8:11.
except 23:14.
exclusively 13:10.
excused 24:16.
exists 10:5.
expect 11:20,
11:21.
expecting 11:1.
experienced 20:15.
explaining 16:19.
explore 19:3.
express 22:22.
extent 8:19,
16:24.
extraordinary
10:2.
extremely 10:10.
.
.
< F >.
faces 9:24.
fact 4:13, 16:10,
17:13, 20:21,
22:9.
facts 20:24.
factual 10:11.
faith 8:10, 13:16,
13:18.
fanciful 22:5.
far 4:23, 15:13,
20:25.

FCRR 1:46, 24:19.
February 19:21.
Federal 1:47.
feet 11:13.
female 3:10.
fight 3:11, 14:13.
figure 13:8.
file 17:5.
files 5:5, 5:6.
find 19:2, 20:25.
finds 21:11,
  22:19.
first 7:22, 11:11,
  15:24, 18:4.
fists 3:13.
five 5:12.
Floor 1:48.
focus 3:17.
focused 13:9.
forcing 17:19.
foregoing 24:20.
foremost 11:11.
form 13:4.
former 6:15.
forth 12:16.
free 9:24, 12:10.
friend 3:9.
fruition 19:15.
furtherance 14:14,
  14:19, 16:12,
  16:14, 16:19,
  16:21.
.

.
< G >.
gang 16:11.
gave 11:3.
Gerald 3:7.
give 13:14.
given 10:11, 12:22,
  13:18, 17:12,
  17:13, 21:2, 21:6,
  21:19, 22:22.
Government 2:6, 3:3,
  3:23, 5:22, 7:11,
  8:10, 13:1, 13:5,
  13:8, 14:14,
  14:18, 14:24,
  15:24, 17:24,
  18:4.

grand 16:22,
  17:13.
grateful 23:7,
  23:9.
greater 8:19.
Greenmount 16:4.
guess 4:15, 11:8.
.

.
< H >.
hand 17:10.
happen 7:19, 8:25,
  22:8.
happened 8:22, 8:23,
  16:10.
happens 9:3,
  18:18.
harder 23:23.
hear 7:15, 23:3.
heard 7:2, 7:6,
  10:4, 13:8, 13:17,
  18:22.
hearing 2:8, 15:5,
  17:5.
hears 18:12.
heat 11:8, 17:9.
helpful 8:17,
  15:23.
hereby 24:19.
high 19:8.
highly 20:15.
Himeles 1:39, 2:11,
  6:18, 10:21, 12:6,
  13:14, 14:10,
  18:1, 18:24,
  20:19, 21:17,
  22:3, 22:5, 22:23,
  23:7, 24:8.
Hoffman 1:27, 2:7.
honestly 12:18,
  15:14.
Honorable 1:18.
hoped 20:20.
Hospital 3:15.
hypothesis 8:19.
.

.
< I >.
identify 20:3.
III 1:33.

illustrates 18:4.
imagine 6:20, 10:9,
  12:22, 23:24.
impairs 11:25.
impeachment 14:2,
  17:8, 21:10.
important 8:17,
  14:3, 21:13.
imputed 14:16.
in. 13:10.
incident 12:24,
  12:25, 13:1, 13:7,
  16:16.
indicate 13:3.
indicated 10:22,
  11:9.
indication 21:6.
indictment 5:23,
  16:3, 17:14.
information 6:11,
  8:3, 8:5, 11:3.
inquiry 10:14.
inside 16:5.
instances 16:7.
instruction 15:4,
  15:12.
instructs 18:20.
interest 2:9, 19:1,
  20:6.
interests 4:23.
intersection 3:8.
intervene 3:12.
involved 12:23,
  21:8.
issue 9:16, 9:17,
  17:21, 18:7,
  18:10.
itself 18:11,
  22:2.
.

.
< J >.
James K. Bredar
  1:18.
Jencks 9:17.
JKB-16-0363 1:9.
JKB-16-363 2:5.
job 10:6.
John 1:33, 2:16.
Johnson 3:7, 3:13,

3:18, 6:1, 12:25,
13:6, 13:10.
judge 11:24.
judgment 17:22.
jury 15:4, 16:22,
17:14, 18:12,
18:20, 18:21.
.
.
< K >.
key 3:15.
kind 5:8, 7:10,
7:12, 17:2.
knowing 11:18.
knows 7:19, 22:16.
.
.
< L >.
laid 14:7, 20:12.
landlord/tenant 4:8,
6:6, 7:23, 7:25,
19:7, 19:16,
19:24.
lanyard 3:16.
last 6:22, 12:12,
20:7, 20:12,
22:15.
later 3:16.
lawyer 7:9, 9:7,
9:20, 10:2, 11:11,
13:23, 15:11,
20:23, 21:21.
lawyers 11:16, 15:3,
15:10, 17:19,
20:2.
laying 22:24.
lead 8:2.
least 4:14, 19:11,
20:25.
leaving 23:15.
left 3:10, 21:17.
legal 14:13,
21:24.
less 10:24.
level 10:14.
liability 21:19.
lick 16:7.
life 23:8.
light 17:12.
likely 7:12.

limited 19:16.
limiting 15:4,
15:12.
line 6:24, 14:2,
21:4, 21:14,
22:4.
lines 15:19.
little 23:23.
living 8:24.
logical 21:15.
Lombard 1:48, 3:8,
16:10.
long 15:17, 15:21,
22:8.
looked 22:25.
loose 23:9.
lots 18:15.
.
.
< M >.
mark 19:8.
Marquise 1:10, 1:31,
2:5.
Marshal 24:16.
Martin 1:39.
Martinez 2:3, 2:6,
3:1, 3:25, 6:19,
12:23, 18:3,
23:17, 24:6.
Maryland 1:2, 1:20,
1:49.
material 9:18, 17:8,
21:10.
materializes 8:15.
matter 4:8, 5:13,
6:6, 7:23, 8:1,
13:22, 19:8,
19:16, 19:24,
20:6, 24:21.
matters 19:14.
mean 7:8.
members 16:4.
memory 9:1, 11:4.
Mercy 3:15.
mere 16:10.
met 15:20.
Michael 2:23.
mind 11:3, 11:19.
moment 7:24, 10:17,
12:6, 12:19,

13:22, 17:2,
17:7.
Monday 23:15.
months 19:10.
morning 2:2, 2:4,
2:7, 2:11, 2:13,
2:16, 2:19, 2:20,
2:21, 2:24, 2:25,
4:4, 12:18,
20:18.
mostly 3:17.
motion 12:7, 13:12,
13:13, 13:15,
13:17, 13:19.
MR. FRANCOMANO 2:16,
4:2, 4:5, 4:9,
4:11, 19:6, 19:21,
20:10, 24:11.
MR. HIMELES 2:13,
7:16, 8:23, 9:3,
9:15, 10:17,
10:22, 11:7, 14:9,
14:11, 15:8, 18:2,
18:7, 23:12,
24:9.
MR. MARTINEZ 2:4,
3:5, 3:20, 3:23,
16:2, 16:18,
17:25, 23:18,
24:7.
MR. VALCOURT 2:25.
MR. WROBEL 2:21,
4:17, 4:25, 5:15,
5:19, 24:4,
24:13.
multiple 16:6.
.
.
< N >.
nature 17:13.
nearly 19:23.
need 15:14, 17:16,
17:22.
needed 23:24.
Next 3:12, 3:14.
nightclub 3:9.
nine 17:15, 22:8.
NO. 1:9.
None 14:7, 19:14.
nonetheless 20:11.

nor 13:23.
normal 15:3.
NORTHERN 1:2.
Nothing 3:23, 7:1,
  21:16, 22:11,
  22:14, 23:6,
  24:9.
notion 10:15,
  22:5.
notwithstanding
  11:14, 11:16.
number 2:5, 8:1,
  17:8.

.

.

< O >.
objection 18:19.
obligation 10:1.
obligations 5:7.
observe 4:3.
observed 3:10.
obviously 5:1,
  9:16.
occupied 16:11.
occur 3:19.
occurring 5:3.
offered 14:21,
  14:22, 16:17.
officer 20:1,
  22:17.
Official 1:47,
  24:25.
Okay 3:21, 3:25,
  4:20, 12:4, 20:11,
  23:16, 23:20,
  24:5, 24:14.
once 5:9, 18:11.
One 4:10, 4:23,
  7:14, 8:25, 11:17,
  12:21, 13:17,
  13:25, 14:11,
  16:16, 17:20,
  18:17, 20:7,
  20:15, 23:8.
one. 11:18, 17:9,
  21:18, 22:9.
ongoing 12:24.
opportunity 4:3,
  4:18, 13:14,
  18:10, 22:22.

ought 17:16.
outside 3:8, 3:11,
  16:5, 16:11.
oversight 11:24,
  12:2.
overt 16:21,
  17:14.
own 17:22, 20:3.

.

.

< P >.
part 3:6, 13:8,
  14:6, 19:12,
  22:15.
particular 12:25,
  13:7, 21:24.
passage 19:25,
  21:7.
past 7:10.
patrons 3:10.
perceive 13:11.
perfect 22:7.
perfectly 5:21.
permitted 5:7,
  15:22.
person 4:10, 6:1.
personally 2:18.
persuaded 12:19,
  12:20, 17:15,
  18:25, 23:5.
persuasive 20:21.
Peter 2:6.
Peter J. Martinez
  1:25.
phone 3:15.
piece 17:7.
Pinkerton 14:15,
  21:19.
Plaintiff 1:7,
  1:23.
please 2:2.
point 7:12, 9:5,
  14:11, 18:3, 18:9,
  18:23, 20:3,
  21:13.
posit 6:3.
position 5:10, 6:23,
  7:9, 9:21, 17:24,
  18:4, 20:18,
  22:19.

possibility 7:17,
  10:12, 12:20,
  15:2.
possible 4:15,
  11:13, 14:5,
  17:20.
potential 2:8, 7:13,
  8:14, 8:15, 13:20,
  13:21, 16:25,
  17:13, 22:9.
potentially 10:10,
  21:19.
practice 20:2.
precluded 8:5,
  8:21.
precludes 20:8.
predicate 10:11.
predict 8:25,
  22:6.
prejudiced 12:2.
prepared 9:12,
  14:24, 16:15,
  17:5.
Present 1:37, 2:15,
  2:18, 2:23,
  22:3.
presented 21:3.
presents 18:11,
  22:2.
presume 14:14,
  14:20.
prevent 15:17.
prevents 17:10.
previously 4:7,
  10:22, 11:9.
primarily 6:1.
prior 6:20, 20:4.
problem 15:7, 17:21,
  23:5.
proceed 10:13,
  11:16, 11:18,
  12:10.
Proceedings 1:17,
  24:17, 24:21.
productively 24:5.
proffer 3:2, 7:10,
  12:22, 13:7.
proffered 6:20.
proof 16:16.
protect 9:25,

17:23.
provide 3:3.
provided 7:10.
pulls 21:18.
purposes 6:12.
pursuant 19:19.
pursue 21:5,
  21:15.
pursuing 14:3.
put 12:6.
.
.
< Q >.
question 5:17, 6:7,
  6:24, 9:6, 11:5,
  12:6, 12:9, 12:12,
  12:15, 16:12,
  16:15, 17:23,
  23:4, 23:25.
questioning 6:24,
  8:10.
questions 7:7.
quite 12:22.
.
.
< R >.
R. 1:33.
raise 9:16, 12:5.
raised 6:7, 9:16,
  17:1.
raising 17:10.
reacted 20:11.
reacting 11:12.
real 10:3, 15:11,
  16:24, 22:15.
reality 21:2.
realize 11:14.
really 12:5, 12:14,
  16:14, 21:24,
  22:11, 22:14.
reason 9:15, 10:23,
  16:18.
reasonably 14:1.
reassert 9:10.
reassertion 9:11.
recall 7:24, 19:5.
recalls 8:16,
  8:20.
received 9:17.
recess 24:15.

recognizes 11:22.
recollection 5:6,
  8:8.
record 17:21, 20:7,
  24:21.
reform 19:12.
refresh 8:8.
regard 20:17.
regarded 20:16.
regardless 21:15.
regime 16:5.
relate 14:12,
  18:5.
relation 13:1.
relationship 7:20,
  7:21, 12:24, 13:6,
  19:13, 24:1.
relevant 8:16, 8:20,
  20:24.
remanded 24:15.
remember 8:6, 17:4,
  17:7.
remembering 17:4.
remote 12:20, 13:21,
  22:9.
reported 4:6.
Reporter 1:47,
  24:25.
represent 9:21,
  19:14.
representation 5:1,
  5:2, 5:12, 6:15,
  8:4, 13:13, 19:15,
  19:23, 20:5.
representations
  5:11, 8:2.
represented 4:8,
  19:4.
representing 5:25,
  19:18, 20:9.
represents 7:14.
request 23:23.
respect 5:8, 5:12,
  23:24.
respond 11:12.
response 18:3.
responsibilities
  22:16.
returned 3:16,
  17:14.

reveal 9:9, 11:2.
reviewing 12:9.
revisit 24:2.
RICO 16:4.
rights 4:23.
ripe 10:3, 22:10.
rise 11:3.
risen 20:19.
risk 11:23.
robberies 16:5.
robbery 3:7, 16:8,
  16:9.
RPR 1:46, 24:19.
rule 5:4, 10:12.
rules 6:12, 6:14.
ruling 18:24.
rushes 18:14.
.
.
< S >.
satisfies 6:14.
saying 17:11.
says 23:1.
scenario 11:19,
  13:23, 20:12.
seated 2:2, 4:12.
second 8:10,
  10:13.
secondly 18:5.
Section 5:3.
seeking 13:12.
seem 5:25, 13:3,
  21:9.
seems 13:9.
seen 5:4, 5:21,
  5:22, 6:25, 7:2,
  7:6, 7:8, 15:21.
sense 5:15, 14:13,
  14:21.
separate 5:25,
  23:4.
serve 15:6.
services 23:24.
seven 19:16, 19:22,
  19:23.
shape 13:4.
shared 6:4, 8:3.
shoes 14:1.
show 13:18.
side 16:8, 22:25.

significance 21:24.
similar 5:2, 6:20.
simply 12:12, 17:23, 21:15.
single 19:16.
sir 24:7.
sitting 21:22.
situation 4:22, 7:10, 7:14, 12:8, 20:22, 21:11, 22:2, 22:3.
situations 6:20.
solely 13:9.
solution 15:6.
somebody 16:7, 16:8.
someone 6:23, 14:1.
sort 21:18, 23:9.
sounds 23:20.
sparked 9:2.
speaking 12:18, 16:3.
specific 11:19, 12:24, 12:25.
specifically 23:4.
Speculative 17:1, 17:8, 17:9, 17:12, 18:8.
speed 20:24.
spend 21:12.
spot 12:7.
squarely 12:6.
stand 5:9, 6:8, 6:23, 9:13, 15:18, 17:3, 17:6, 19:2.
standby 23:10, 24:2.
stands 13:22.
starting 7:12.
state 20:16.
statement 18:17, 18:19.
States 1:1, 1:5, 2:5.
steer 5:16.
stenographic 24:20.

step 20:13.
Steven 1:37.
stipulation 14:25, 15:16, 15:23, 16:1, 17:17.
stipulations 17:20.
strategic 14:5.
strategy 7:8, 14:6.
Street 1:48, 3:8.
strike 8:8.
strongest 20:21.
subject 7:15, 15:3, 22:23.
subjects 12:2.
submit 8:14.
subsequent 19:10, 19:23.
substance 21:4.
substantial 13:6, 19:25.
substantially 5:2.
sudden 17:6.
suddenly 11:3, 17:4.
suggested 15:20.
Suppose 14:24, 15:17, 18:2, 23:22.
suspicion 4:6.
.
.
< T >.
T. 1:46, 24:24.
talked 4:13.
task 20:20.
technical 15:6.
terms 5:8, 6:15, 7:11, 17:3, 22:23.
territory 16:6, 16:11.
testify 3:6, 13:2, 23:17.
testifying 18:18.
testimony 3:2, 3:17, 4:14, 6:19, 8:7, 8:9, 13:3, 13:9, 14:12, 14:13,

14:25, 16:6, 18:5, 18:12, 18:13, 18:21, 21:2.
Thanks 4:12.
theoretical 12:5, 13:24, 15:2, 15:7, 21:18.
theoretically 4:14, 10:9, 21:21.
theory 13:5, 16:13, 16:19.
they've 18:22.
thinking 11:12.
threshold 10:1.
throw 17:20.
today 6:8, 10:4, 17:5, 18:25, 24:6.
took 12:11.
topic 21:12.
totally 17:18.
town 23:13.
Transcript 1:17, 24:20.
treat 23:8.
trial 7:18, 8:7, 8:15, 9:1, 9:4, 9:8, 9:13, 9:22, 10:7, 11:9, 11:11, 17:10, 18:8, 18:9, 18:11, 20:9, 22:6, 22:7, 22:9, 22:18, 23:9.
trials 7:19, 8:24.
true 7:6, 21:21.
truly 7:11.
try 13:18.
trying 7:13.
Tuesday 1:19.
turns 8:16.
two 3:10, 17:9, 18:4, 19:12.
typically 18:18.
.
.
< U >.
ultimate 22:10.
ultimately 8:1, 22:13.
unable 9:21, 13:22,

22:3.
unanticipated
  8:11.
uncertain 18:8.
uncovered 13:20.
undermined 14:5.
understand 12:4,
  15:5, 16:25,
  17:24.
understandably
  9:20.
understanding 5:23,
  13:19.
understands 15:13.
United 1:1, 1:5,
  2:5.
universe 6:4.
unlikely 10:10.
unpredictable
  10:7.
unrung 18:16.
until 23:18.
using 8:5, 8:21.
.
.
< V >.
value 14:5.
versus 2:5.
victim 3:7.
view 22:13, 22:23.
views 7:15.
vis-a-vis 21:5.
vs 1:8.
.
.
< W >.
W. 1:48.
waivable 4:24,
  12:13.
waive 22:12,
  22:14.
waived 12:14.
waiver 5:16,
  12:11.
waiving 5:10,
  5:11.
water 19:8.
week 4:7, 12:12,
  20:12, 22:7, 22:8,
  23:14.

west 16:8.
whatever 6:4.
whether 5:5, 11:6,
  12:1, 12:9, 12:10,
  12:11, 15:16,
  15:25, 16:15.
whole 20:12.
will 8:21, 9:4,
  9:25, 11:10, 12:2,
  12:5, 13:4, 16:6,
  17:22, 18:11,
  20:2, 22:20, 23:7,
  23:13.
willing 15:25,
  23:11, 24:3.
wills 20:22.
within 5:5.
without 12:15,
  13:13.
witness 2:23, 12:23,
  13:2, 18:13,
  18:18, 18:20,
  18:21, 21:23.
witnesses 9:22,
  16:6.
woke 3:14.
word 8:7.
Wrobel 1:37, 2:20,
  4:12, 4:24, 6:17,
  12:18, 22:13,
  23:22, 24:12.
.
.
< Y >.
year 19:20.
years 5:12, 6:5,
  6:22, 8:1, 19:5,
  19:10, 19:16,
  19:22, 19:23.